# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 21, 2013

No. 12-10435

Lyle W. Cayce
Clerk

STEVEN GLEN SMITH,

Petitioner - Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before DeMOSS, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

A jury convicted Steven Glen Smith ("Smith") of sexual assault under section 22.011 of the Texas Penal Code. That provision criminalizes "intentionally or knowingly[] . . . caus[ing] the penetration of the . . . sexual organ of another person by any means, without that person's consent." TEX. PENAL CODE § 22.011(a)(1)(A). It also defines the circumstances under which that sexual activity occurs without the other person's consent, including—and as applicable here—when "the actor is a clergyman who causes the other person

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-10435

to submit or participate by exploiting the other person's emotional dependency on the clergyman in the clergyman's professional character as spiritual adviser." *Id.* § 22.011(b)(10).

On direct appeal, Smith's court-appointed counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), and Smith responded with a pro se brief raising several issues, including a challenge to the constitutionality of section 22.011(b)(10). The Texas court of appeals affirmed the conviction, and the Texas Court of Criminal Appeals ("TCCA") denied Smith's petition for discretionary review. Smith then sought state post-conviction relief, adding a claim of ineffective assistance of appellate counsel for failure to identify any nonfrivolous issue on direct appeal. The TCCA ultimately denied Smith relief, and Smith filed a federal habeas petition. Although the district court denied relief, it granted Smith a certificate of appealability ("COA") limited to two grounds: (1) the constitutionality of section 22.011(b)(10); and (2) ineffective assistance of appellate counsel for failure to identify *any* nonfrivolous issue on appeal and instead filing an *Anders* brief.

On review of the parties' arguments and given the deferential standard of review required by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we cannot conclude that the TCCA rendered, with respect to any of Smith's claims, "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, we AFFIRM the judgment of the district court, denying Smith habeas relief.

## BACKGROUND

### A.

Smith was convicted under section 22.011(a)(1)(A) and (b)(10) of the Texas Penal Code for "intentionally and knowingly caus[ing] penetration of the female sexual organ of CHRISTY DOWNEY" ("Downey") without Downey's consent

because Smith was a "clergyman [who] caused [Downey] to submit and participate by exploiting [Downey's] emotional dependency on [Smith] in [Smith's] professional character as spiritual advisor." *See* TEX. PENAL CODE § 22.011(a)(1)(A), (b)(10).

Smith founded the Family of God Church of the Bible. Smith was not an ordained minister, and the church met only in its members' homes. Smith was the church's only pastor, he "led every prayer session," and he performed marriages and funerals. Moreover,

> [t]here were never any [other leaders or pastors]. From the very beginning until the end of that church [Smith] was the only one to teach. He was the only one to authorize any special ministries. He was the only one to author any literature that was produced by the church.

The members of the church "relied on [Smith] heavily" for counseling, and Smith "warn[ed]" them "that he did not want [them] counseling each other, that he was the one who had the broadest understanding of all [their] lives."

Downey belonged to the church, and her counseling relationship with Smith began soon after she joined. Smith became "very special" to Downey because of what she believed was his desire "to see [each church member] grow spiritually and become spiritually mature." She "shared with him from the deepest part of [her] heart." With Smith, Downey discussed: (1) issues with her self esteem resulting from her "very manipulative relationship" with her father "where he would berate [her] quite a bit emotionally"; (2) her father's 1997 suicide; and (3) her grandfather's increasingly serious diabetes complications starting in 1999.

In 1999, two years after her father's suicide and while her grandfather was dying from diabetes, Downey suffered from depression and was "emotionally depleted." Smith's advice following her father's suicide and for the two years following was "one of the biggest things that connected me to him in my spiritual

life as well as emotionally." Downey became "very dependent on [Smith's] counsel."

Her meetings with Smith were "very spiritual in nature," and Smith was her "only spiritual advisor." Their meetings included prayer, and, because Downey was missing church meetings due to emotional issues and family obligations, Smith would recap what "he had taught about that day" or "specific prayer requests people had mentioned."

One night, Smith called Downey from the parking lot of her apartment to say that he was coming over to pray. The two talked about her grandfather, her depression, and what happened during a church meeting that she had missed. Then Smith told Downey that he was suicidal and said that he was having issues with his marriage. Downey testified about the effect this had on her:

> It had only been two years and three months prior to that that my dad had done that and it very much evoked a fear in my heart. It also just made me feel extremely anxious and I did not know how to cope with that. . . . [I]t linked me back to my dad when my sister and I had found out. . . . It was very traumatic.

Smith and Downey began hugging and praying on the couch, which often happened during counseling sessions "when it was very difficult on [her] emotionally." Smith then asked Downey "to lay on top of him," and she complied because she "was very emotionally distraught." "[W]hile [she] was laying on top of him [she] felt his penis get erect," and, at that point, Smith "asked [her] to go get a towel and so [she] did . . . . [b]ecause he told [her] to." When Downey "came back into the room [Smith] had unzipped his pants and his penis was sticking out of his pants. . . . And [she] masturbated him to ejaculation with [her] hand" because she "felt obligated to do that emotionally."

There were five sexual encounters between Smith and Downey in total, with each encounter following a similar pattern. Smith would call Downey, usually from the parking lot of her apartment, saying that he wanted to come

over and pray with her, and he would go to her apartment. The two would talk about church meetings and Downey's grandfather, which was "a pretty emotional subject," and Downey would cry most of the time. And then Smith would mention his own suicidal thoughts.

During two of the five encounters, Smith vaginally penetrated Downey. After the first time, Smith told Downey "how precious it was to his heart that [she] had let him be so intimate with [her] soul" and said "the Lord had literally used [her] to save his life." Downey "just felt numb." Downey described the second time:

> I began crying silently. I just asked the Lord to help me to know how to cope with this because I could not help him emotionally. I was depleted. . . . [H]e was using me sexually because he was suicidal, even though he knew how much was going on in my life and how vulnerable I was. And I just did not understand how to tell him no.

Downey testified that she engaged in the sexual activity with Smith because of her emotional dependency on him and further stated that "emotionally I could not stop" the sexual encounters with Smith.

Pursuant to Rule 404(b) of the Texas Rules of Evidence,[1] the State presented testimony from two other women, Kendra McGarrahan and Nina Treat. Both women testified that Smith engaged in sexual activity with them and that Smith followed a pattern similar to the one he followed with Downey:

---

[1] Rule 404(b) provides:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

TEX. R. EVID. 404(b).

making the women emotionally dependent on him and then exploiting that dependency for sexual gain.

## B.

On September 29, 2005, a Dallas County jury convicted Smith of sexual assault. At the trial, Michael Gottlieb ("Gottlieb"), a forensic psychologist, testified about sexual misconduct by professionals and the power dynamics and emotional dependency that can develop between professionals and their patients, clients, and advisees. Gottlieb testified that a clergyman can have "power over our emotional and spiritual lives. If we come to them with a dilemma we expect them to diagnose our spiritual problems and to help us find a way to lead the kind of moral life . . . ." In particular, he testified about power being important to the way in which emotional dependency develops. Specifically as to Downey, Gottlieb testified that she was "[e]xtreme[ly]" emotionally dependent on Smith and that she engaged in sexual activity with Smith because he exploited this dependence on him as her spiritual adviser. He observed that by revealing his own problems to Downey, Smith would make her feel even more dependent. The jury sentenced Smith to a ten-year term of imprisonment and assessed a $10,000 fine.

On direct appeal, Smith's appointed counsel did not file a merits brief and instead filed an *Anders* brief, asserting that there were no nonfrivolous issues presented on appeal. *See Smith v. State*, No. 05-06-00183-CR, 2007 WL 642577, at *1 (Tex. App. Mar. 5, 2007). In response, Smith filed a pro se brief raising several issues. *See id.* The Texas court of appeals, however, affirmed, and, on August 22, 2007, the TCCA denied Smith's petition for discretionary review. *See id.*

Through new counsel, Smith filed an application for a writ of habeas corpus in state court. The trial court entered agreed findings of fact stating that Smith received ineffective assistance of counsel with respect to his appellate

No. 12-10435

representation.  Initially, the TCCA directed the trial court to make further findings on Smith's ineffective-assistance-of-counsel claim with respect to both his trial counsel and his appellate counsel.  However, because the findings made by the trial court failed to address the performance of Smith's trial counsel, the TCCA again remanded for additional findings.  Before receiving these supplemental findings, though, the TCCA denied Smith's habeas application based on the court's "independent review of the affidavits from counsel as well as the entire record." *Ex Parte Smith*, No. WR-71,424-01, 2010 WL 456875, at *1 (Tex. Crim. App. Feb. 10, 2010).  Specifically, the TCCA reasoned that Smith failed to "meet his burden to show that he received ineffective assistance of counsel at any stage of his proceedings." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1984)).  The court did not discuss Smith's challenge to the constitutionality of section 22.011(b)(10) nor did it provide further explanation with respect to Smith's ineffective-assistance-of-counsel claim.  *See id.*

Smith subsequently filed a federal habeas petition.  A magistrate judge recommended denying Smith's petition, and the district court agreed, denying Smith relief.  Smith unsuccessfully moved to alter or amend the district court's judgment and filed a timely notice of appeal.  However, Smith successfully moved for a COA limited to a challenge to the constitutionality of section 22.011(b)(10) and a claim of ineffective assistance of Smith's court-appointed appellate counsel on direct appeal.

## STANDARD OF REVIEW

Under AEDPA,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

7

No. 12-10435

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 784-85. This is true particularly in light of the fact that "§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Id.* at 785.

"Where," as here, "a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 784. To assess whether a petitioner has made this showing, the "habeas court must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 786. "If there is any objectively reasonable basis on which the state court could have denied relief, AEDPA demands that [the habeas court] respect its decision to do so." *Amos v. Thornton*, 646 F.3d 199, 205 (5th Cir. 2011) (per curiam). Section 2254(d)'s relitigation bar is thus "a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"

No. 12-10435

*Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (citation omitted). Furthermore, "[t]he petitioner carries the burden of proof." *Id.*

Section 2254(d)(1)'s reference to clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Furthermore, "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. That said, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410. "[T]he state court's decision must have been more than incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Rather, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 786.

## DISCUSSION

The district court granted Smith a COA with respect to two issues: (1) the constitutionality of section 22.011(b)(10); and (2) the effectiveness of Smith's court-appointed appellate counsel for failing to identify *any* nonfrivolous issue on appeal and instead filing an *Anders* brief. With respect to the first issue, Smith claims that section 22.011(b)(10) is unconstitutional because it (1) is overbroad because it criminalizes constitutionally protected sexual activity under *Lawrence v. Texas*, 539 U.S. 558 (2003); (2) is void for vagueness because the terms "emotional dependency" and "clergyman" do not provide a person of ordinary intelligence fair notice of what is prohibited or otherwise lacks sufficient clarity to avoid the risk of discriminatory enforcement; and (3) violates the Establishment Clause by fostering excessive government entanglement with

religion under *Lemon v. Kurtzman*, 403 U.S. 602 (1971). With respect to the second issue, Smith claims that his court-appointed counsel on direct appeal was ineffective under *Strickland v. Washington* because he failed to identify three nonfrivolous issues on appeal, namely that: (1) section 22.011(b)(10) is unconstitutional; (2) the evidence adduced at trial was insufficient to convict him; and (3) the trial court erroneously sustained the State's objection to Smith's counsel's attempt to define "clergyman" as requiring ordination.

On review of the parties' arguments and given AEDPA's deferential standard of review, we cannot say that the TCCA rendered, with respect to any of Smith's claims, "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, we AFFIRM the judgment of the district court, denying Smith habeas relief.

### A.

### 1.

"[T]he overbreadth doctrine enables litigants 'to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'" *Hill v. Colorado*, 530 U.S. 703, 731-32 (2000) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)). "[T]he allowance of a facial overbreadth challenge to a statute is an exception to the traditional rule that 'a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court.'" *L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999) (quoting *New York v. Ferber*, 458 U.S. 747, 767 (1982)). To evaluate whether a statute is overbroad, the court must "determine whether the enactment reaches a *substantial* amount of constitutionally protected conduct."

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982) (emphasis added). On this basis, Smith argues that section 22.011(b)(10) is unconstitutionally overbroad because it reaches a substantial amount of constitutionally protected sexual *conduct* under *Lawrence v. Texas*. As a threshold matter, we must consider whether Smith may take advantage of overbreadth analysis under the circumstances of this case.

The Magistrate Judge rejected Smith's overbreadth argument, reasoning that overbreadth doctrine is available only with respect to First Amendment challenges. *See United States v. Clark*, 582 F.3d 607, 612 (5th Cir. 2009) (stating that "overbreadth doctrine is applicable only to First Amendment challenges"). In response, Smith asserts that freedom of association, in addition to free speech and expression, may serve as a legitimate basis for bringing an overbreadth challenge. However, Smith, in his federal habeas petition, never asserted his overbreadth challenge on the basis of freedom of association. His challenge, then, is predicated on substantive due process implicated by *Lawrence*.

The Supreme Court has said that "[r]arely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 U.S. 123, 124 (2003). That said, although the Supreme Court "[has] recognized the validity of facial attacks alleging overbreadth . . . in relatively few settings," it *has* done so in situations outside the free-speech context, including right-to-travel cases, challenges to legislation enacted under Section 5 of the Fourteenth Amendment, and abortion cases. *See Sabri v. United States*, 541 U.S. 600, 609-10 (2004).

It may be that the concerns animating overbreadth doctrine—namely, that section 22.011(b)(10)'s mere existence may lead individuals to refrain from engaging in constitutionally protected conduct—are also implicated by Smith's putative overbreadth challenge. *See Hill*, 530 U.S. at 731-32; *see also* David H.

No. 12-10435

Gans, *Strategic Facial Challenges*, 85 B.U. L. REV. 1333, 1338 (2005) (reasoning that among the "strategic bases for facial invalidation that recur throughout constitutional adjudication" is "a chilling effect theory, featured not only in First Amendment overbreadth doctrine, *but also in privacy*[] . . . *cases* [such as those involving abortion]"). Given that abortion cases and *Lawrence* are both predicated on a substantive due process right to privacy, there is some merit to Smith's argument that the kind of facial challenge he seeks to assert triggers overbreadth's protection. However, even assuming, based on an analogy to overbreadth challenges the Supreme Court has permitted in abortion cases, that Smith may bring an overbreadth challenge predicated on substantive due process, we are convinced that it would not have been unreasonable for the TCCA to have interpreted *Lawrence v. Texas* in a way that foreclosed Smith's argument.

Smith argues that, based on *Lawrence*, individuals have a constitutionally protected right to engage in sexual activity under the Due Process Clause of the Fourteenth Amendment. Smith asserts that section 22.011(b)(10) negates consent as a matter of law to what is constitutionally protected conduct, for instance, a clergymember advising his or her spouse on the Bible. Thus, Smith reasons, section 22.011(b)(10) reaches a substantial amount of constitutionally protected conduct.

*Lawrence* invalidated a "Texas statute making it a crime for two persons of the same sex to engage in certain intimate sexual conduct." 539 U.S. at 562, 578. The Court emphasized what the case was, and was not, about:

> The present case does not involve minors. *It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused.* It does not involve public conduct or prostitution. It does not involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter. The case does involve two

12

adults who, *with full and mutual consent from each other*, engaged in sexual practices common to a homosexual lifestyle.

*Id.* at 578 (emphasis added). On this basis, we have explained that "the [*Lawrence*] Court concluded that the sodomy law violated the substantive due process right to engage in *consensual* intimate conduct in the home free from government intrusion." *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 744 (5th Cir. 2008) (emphasis added). *Lawrence*'s focus on consensuality dooms Smith's overbreadth challenge.

First, courts interpreting *Lawrence* have declined to interpret it as establishing a right to engage in all sexual activity. *See, e.g.*, *Seegmiller v. Laverkin City*, 528 F.3d 762, 770 (10th Cir. 2008) ("[T]he Court has never endorsed an all-encompassing right to sexual privacy under the rubric of substantive due process."); *Cook v. Gates*, 528 F.3d 42, 56 (1st Cir. 2008) ("*Lawrence* recognized only a narrowly defined liberty interest in adult consensual sexual intimacy in the confines of one's home and one's own private life."); *Williams v. Att'y Gen. of Ala.*, 378 F.3d 1232, 1236 (11th Cir. 2004) ("[T]he Court has never indicated that the mere fact that an activity is sexual and private entitles it to protection as a fundamental right."). Second, several courts have determined that *Lawrence* does not disturb criminal provisions designed to ensure that sexual relationships are consensual. *See, e.g.*, *Lowe v. Swanson*, 663 F.3d 258, 264 (6th Cir. 2011) (citing *Lawrence*, upholding a conviction based on the defendant's sex with his twenty-two-year-old stepdaughter, and stating that "[u]nlike sexual relationships between unrelated same-sex adults, the stepparent-stepchild relationship is the kind of relationship in which a person might be injured or coerced or where consent might not easily be refused, regardless of age, because of the inherent influence of the stepparent over the stepchild"); *Anderson v. Morrow*, 371 F.3d 1027, 1029, 1033 (9th Cir. 2004) (rejecting a vagueness challenge to a statute that prohibited sex with any person

No. 12-10435

"incapable of consent by reason of mental defect" and stating that *Lawrence* "does not affect a state's legitimate interest and indeed, duty, to interpose when consent is in doubt"); *Loomis v. United States*, 68 Fed. Cl. 503, 519 (2005) ("[T]he nature of the relationship between plaintiff [a lieutenant colonel] and the [private first class], while not directly within a chain of command, is such that consent might not easily be refused and thus it is outside of the liberty interest protected by *Lawrence*."). And although § 2254(d)(1) refers to "clearly established Federal law, as determined by the Supreme Court," that several state courts have likewise rejected due process challenges to criminal provisions similar to section 22.011(b)(10), *see, e.g.*, *Talbert v. State*, 239 S.W.3d 504, 511 (Ark. 2006) (citing *Lawrence* and holding that a clergymember "has no liberty interest to engage in sexual activity by abusing his position of trust and authority"); *State v. Bussman*, 741 N.W.2d 79, 84 n.2 (Minn. 2007) ("Members of the clergy have neither a First Amendment nor a liberty interest in sexual activity gained through exploitation of the clergy-counselee relationship."), suggests that a reading of *Lawrence* foreclosing Smith's overbreadth argument would not have been unreasonable.

Given this, we cannot say that it would have been unreasonable for the TCCA to have concluded that section 22.011(b)(10) reaches only sexual activity rendered nonconsensual based on a clergymember's abuse of his position and, consequently, that the statute does not implicate any protected sexual conduct and there is no danger of overbreadth under *Lawrence*, *see Hersh v. United States ex rel. Mukasey*, 553 F.3d 743, 762 n.23 (5th Cir. 2008) (reasoning that in cases not involving the First Amendment, "a statute is overbroad if it is 'unconstitutional in all of its applications'" (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008))), or that any overbreadth is

14

No. 12-10435

insufficiently substantial to warrant relief, *see United States v. Williams*, 553 U.S. 285, 292 (2008); *Hicks*, 539 U.S. at 122.[2]

2.

"Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment." *Williams*, 553 U.S. at 304. "A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id.* (citing *Hill*, 530 U.S. at 732). However, "perfect clarity and precise guidance have never been required." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989).[3]

In *Williams*, the Court held that a statute criminalizing knowingly "advertis[ing], promot[ing], present[ing], distribut[ing], or solicit[ing] . . . any material or purported material *in a manner that reflects the belief*, or *that is intended to cause another to believe*, that the material or purported material is,

---

[2] We question Smith's reading of *Hornbuckle v. State*, Nos. 2-06-316-CR, 2-06-317-CR, 2-06-318-CR, 2008 WL 2168007 (Tex. App. 2008), the only Texas court of appeals case addressing section 22.011(b)(10), as holding that the statute does not require proof of exploitation. This reading is contrary to the statute's text, *see* TEX. PENAL CODE § 22.011(b)(10) (requiring "exploit[ation]"), divorced from *Hornbuckle*'s context, *see Hornbuckle*, 2008 WL 2168007, at *4 (noting that the complainant "testified that [the defendant] was her bishop and that he caused her to submit to his sexual advances *by exploiting* her emotional dependence on him as her spiritual advisor") (emphasis added), and at any rate not definitive for us, *see Packard v. OCA, Inc.*, 624 F.3d 726, 729 (5th Cir. 2010) ("The decisions of Texas intermediate appellate courts may provide guidance, but are not controlling."), or for that matter for the TCCA as the highest criminal court in Texas.

[3] Smith asserts both a facial and an as-applied challenge based on what he claims is the indeterminacy of the terms "clergyman" and "emotional dependency." However, "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Hoffman*, 455 U.S. at 495. On review of the facts of this case, we are persuaded that it would not have been an unreasonable application of *Hoffman* for the TCCA to have concluded that Smith engaged in conduct clearly proscribed by section 22.011(b)(10) and, therefore, to have entertained only Smith's as-applied vagueness challenge. We therefore do the same.

15

or contains," child pornography was not unconstitutionally vague. 553 U.S. at 289-90, 305-07 (emphasis added). The defendant argued that the phrase "in a manner that reflects the belief" or "that is intended to cause another to believe" failed to provide a person of ordinary intelligence fair notice of what the statute proscribed and otherwise lacked sufficient standards to avoid the danger of discriminatory enforcement. The Court, however, disagreed, rejecting both assertions.

The Court criticized the court of appeals—which had concluded that the statute was unconstitutionally vague—for posing supposedly problematic hypotheticals and reasoning that the possibility of close cases renders a statute vague. *Id.* at 305. "Close cases can be imagined under virtually any statute," the Court said. *Id.* at 306. "The problem that poses is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." *Id.* (citing *In re Winship*, 397 U.S. 358, 363 (1970)). The Court went on:

> What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is. Thus, we have struck down statutes that tied criminal culpability to whether the defendant's conduct was "annoying" or "indecent"—wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings.

*Id.* (citing *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971), and *Reno v. ACLU*, 521 U.S. 844, 870-71 & n.35 (1997)).

The *Williams* Court concluded that the statutory provisions at issue did not render the law unconstitutionally vague or indeterminate for the following reasons:

> The statute requires that the defendant hold, and make a statement that reflects, the belief that the material is child pornography; or that he communicate in a manner intended to cause another so to believe. Those are clear questions of fact. Whether someone held a belief or had an intent is a true-or-false determination, not a

subjective judgment such as whether conduct is "annoying" or "indecent."  Similarly true or false is the determination whether a particular formulation reflects a belief that material or purported material is child pornography.  To be sure, it may be difficult in some cases to determine whether these clear requirements have been met.  But courts and juries every day pass upon knowledge, belief and intent—the state of men's minds—having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred. And they similarly pass every day upon the reasonable import of a defendant's statements—whether, for example, they fairly convey a false representation or a threat of physical injury.  Thus, the [court of appeals]'s contention that [the statute] gives law enforcement officials "virtually unfettered discretion" has no merit. No more here than in the case of laws against fraud, conspiracy, or solicitation.

*Id.* at 306-07 (citations omitted) (internal quotation marks omitted).

Applying the foregoing vagueness-doctrine principles to the present case, we conclude that it would not have been unreasonable for the TCCA to have determined that section 22.011(b)(10) is not unconstitutionally vague or indeterminate.  The statute requires that the defendant acted as a clergymember who knowingly caused his victim to submit or participate in sexual activity by exploiting the victim's emotional dependency on him in his professional character as the victim's spiritual adviser.  *See* TEX. PENAL CODE § 22.011(b)(10).  As with the statute at issue in *Williams*, the relevant inquiry involves "clear questions of fact."  *Williams*, 553 U.S. at 306.  Whether the defendant acted as a clergymember and whether he knowingly exploited the victim's emotional dependancy on him in his professional character as spiritual adviser are true-or-false determinations, rather than subjective judgments such as whether conduct is considered "annoying" or "indecent" by a particular complainant.  *Id.*  "To be sure, it may be difficult in some cases to determine whether these clear requirements have been met.  But courts and juries every day pass upon knowledge, belief and intent—the state of men's minds—having before them no

more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred." *Id.* (internal quotation marks omitted). Based on *Williams*, the TCCA could have reasonably concluded that determining whether someone acted as a clergyman who knowingly exploited the victim's emotional dependency on him in his professional character as spiritual adviser does not implicate either vagueness doctrine's fair notice concerns or its selective enforcement concerns. *See id.* at 304. Accordingly, we cannot say that it would have been unreasonable for the TCCA to have determined that section 22.011(b)(10) clearly proscribed Smith's conduct, rejected his as-applied challenge, and concluded that the terms "clergyman" and "emotional dependency" were not impermissibly vague. *See* 28 U.S.C. § 2254(d)(1); *Williams*, 553 U.S. at 304-07; *Hoffman*, 455 U.S. at 495.

3.

The Establishment Clause provides that "Congress shall make no law respecting an establishment of religion." U.S. CONST. amend I. In *Lemon v. Kurtzman*, the Supreme Court developed a three-part test to identify violations of that Clause. *See* 403 U.S. at 612-13. Under this test, "[f]irst, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster 'an excessive government entanglement with religion.'" *Id.* (citation omitted). With respect to *Lemon*'s third prong, it bears emphasizing that the "[e]ntanglement must be 'excessive' before it runs afoul of the Establishment Clause." *Agostini v. Felton*, 521 U.S. 203, 233 (1997). "[S]ome level of involvement between" church and state is permissible. *See id.*

Generally speaking (and notwithstanding AEDPA's added layer of deference), a party asserting an Establishment Clause violation under the *Lemon* test need only show that the challenged state action fails *one* of *Lemon*'s three prongs. *See Comer v. Scott*, 610 F.3d 929, 934 (5th Cir. 2010). In this case, Smith

concedes that section 22.011(b)(10) both has a secular purpose and neither advances nor inhibits religion.    Therefore, Smith's challenge to section 22.011(b)(10) focuses on *Lemon*'s third prong—whether the statute fosters excessive government entanglement with religion.

Smith first argues that section 22.011(b)(10) fosters excessive entanglement because it lacks any secular standard and instead proscribes certain conduct by "expressly incorporating" religious doctrine.  Smith does not, however, elaborate on how the statute incorporates religious doctrine, particularly given that section 22.011(b)(10) defines lack of consent as a function of exploited emotional dependency and without reference to any particular religious doctrine.  *See* TEX. PENAL CODE § 22.011(b)(10).  Moreover, in light of the statute's other subsections, subsection (b)(10) appears to be less concerned with religious doctrine than it is with impermissible exploitation of uneven power dynamics.  *Compare id.* § 22.011(b)(10) (clergymember), *with id.* § 22.011(b)(8) (public servant), *and id.* § 22.011(b)(9) (mental-health-services or health-care-services provider). Accordingly, it would not have been unreasonable, under *Lemon*, had the TCCA concluded that section 22.011(b)(10)'s inquiry, as the State puts it, "no more plunges the State into religious affairs than paragraph (b)(9) thrusts it into medical practice" and thus does not amount to excessive government entanglement with religion.

Smith next argues that section 22.011(b)(10) fosters excessive entanglement because the statute establishes a legislative presumption that there can be no consent between a member of the clergy and another.  On this basis, he warns that "an unmarried clergyman who dated a parishioner and had sexual contact by mutual consent would be guilty of the crime if the parishioner was emotionally dependent on the clergyman as a religious/spiritual advisor." Smith, however, ignores that there can be no "mutual consent" so long as the clergymember knowingly *exploits* the emotional dependency.  In this regard,

No. 12-10435

section 22.011(b)(10) does not target members of the clergy so much as forbid them, given their position of power over the people to whom they minister, from exploiting any emotional dependency that develops. Accordingly, the only legislative presumption that section 22.011(b)(10) seems to establish is that a clergymember may not exploit another's emotional dependency after having acted as that person's spiritual advisor. *See* TEX. PENAL CODE § 22.011(b)(10). Given this, we cannot say that the TCCA's rejection of Smith's Establishment Clause challenge involved an unreasonable application of the *Lemon* test. *See* 28 U.S.C. § 2254(d)(1); *Lemon*, 403 U.S. at 612-13.[4]

B.

With respect to Smith's ineffective-assistance-of-appellate-counsel claim, he must satisfy the two-prong test of *Strickland v. Washington*. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000). To succeed,

> [Smith] must first show that his counsel was objectively unreasonably in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [Smith] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal.

---

[4] In *State v. Bussman*, the Minnesota Supreme Court considered a *Lemon*-based challenge to a similar criminal statute, which provided that "a person who engages in sexual penetration with another . . . is guilty of criminal sexual misconduct . . . if . . . the actor is or purports to be a member of the clergy, the complainant is not married to the actor, and[] . . . the sexual penetration occurred during a period of time in which the complainant was meeting on an ongoing basis with the actor to seek or receive religious or spiritual advice, aid, or comfort in private." 741 N.W. 2d at 81-83. An equally divided court concluded that this statute violated the Establishment Clause. *See id.* at 84-89. The justices noted, however, that the statute—unlike section 22.011(b)(10)—required no proof of "the vulnerability of the victim" or "that the clergy member abused [his] position." *Id.* at 86, 88. Even if *Bussman* were not distinguishable on this basis, the Minnesota Supreme Court was equally divided, suggesting that reasonable minds could differ as to its conclusion. Furthermore, a state supreme court cannot clearly establish law as required by § 2254(d)(1).

20

No. 12-10435

*Id.* (citation omitted). Reviewing Smith's ineffective-assistance-of-counsel claim through the lens of AEDPA, however, means that Smith has a higher bar to exceed in order to prevail. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 131 S. Ct. at 788 (citations omitted). Moreover, unreasonableness under *Strickland* and under § 2254(d) are not the same. First, "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.* Second, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 788.

We need not consider the merits of Smith's argument that, under *Strickland*'s first prong, his appellate counsel performed deficiently by failing to file a merits brief because, as *Strickland* and *Smith* counsel, we may dispose of Smith's ineffective-assistance-of-appellate-counsel claims by reference to *Strickland*'s second prong—actual prejudice. *See Smith*, 528 U.S. at 285; *Strickland*, 466 U.S. at 697. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster*, 131 S. Ct. at 1403. "Thus, a court must determine the probable outcome of the appeal had counsel's performance not been deficient." *Schaetzle v. Cockrell*, 343 F.3d 440, 448 (5th Cir. 2003).[5] In this regard, Smith has failed

---

[5] In his briefing, Smith claims that with respect to *Strickland*'s prejudice prong he need not show a reasonable probability that he would have prevailed on appeal. Instead, he asserts that the relevant inquiry is whether he "received a fair appeal the result of which is worthy of confidence." This is incorrect. In support of this proposition, Smith cites inapposite case law either addressing ineffective assistance of *trial* counsel, *see, e.g.*, *Lockhart v. Fretwell*, 506

No. 12-10435

to convince us that, with respect to each of his ineffectiveness claims, the TCCA unreasonably concluded that there was not "a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." 28 U.S.C. § 2254(d)(1); *Smith*, 528 U.S. at 285.

1.

Smith first argues that his appellate counsel was ineffective for failing to challenge the constitutionality of section 22.011(b)(10). We have already concluded that the TCCA did not render a decision involving an unreasonable application of clearly established federal law, thus defeating Smith's direct challenge to the constitutionality of section 22.011(b)(10). *See* 28 U.S.C. § 2254(d)(1). Given that the TCCA did not unreasonably reject Smith's constitutional claim, we cannot say that the TCCA unreasonably concluded that had Smith's court-appointed appellate counsel challenged section 22.011(b)(10)'s constitutionality on appeal, there was not a reasonable probability that Smith would have prevailed. *See id.*; *Smith*, 528 U.S. at 285.

2.

Smith next argues that his appellate counsel was ineffective for failing to challenge the sufficiency of the evidence. A challenge to the sufficiency of the evidence asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which suggests an additional layer of deference on top of *Strickland*'s deference to counsel and AEDPA's relitigation bar. Smith fails to overcome these hurdles.

---

U.S. 364 (1993), or discussing instances in which the court may presume prejudice because the petitioner was wholly denied the assistance of counsel on appeal, *see Hendricks v. Lock*, 238 F.3d 985 (8th Cir. 2001). Given that Smith's court-appointed appellate counsel complied with the procedures established by *Anders*, he was not wholly denied the assistance of counsel on appeal. *See Smith*, 528 U.S. at 286-87.

22

No. 12-10435

First, Smith argues that the evidence was insufficient to show that Smith was acting in his "professional character as spiritual adviser" *at the time* of the sexual activity with Downey.  Section 22.011(b)(10), however, does not require that the proscribed sexual activity take place contemporaneously with any spiritual advice.  *See* TEX. PENAL CODE § 22.011(b)(10).  Regardless, we cannot say, on review of the evidence presented at trial, that the TCCA unreasonably concluded that a rational factfinder could have determined that Smith *was* acting in his professional capacity at the time of the sexual activity.

Second, Smith asserts that Downey was not emotionally dependent on him at the time of the sexual activity.  Smith, however, ignores the evidence presented to the jury, from which a rational factfinder could have concluded that Downey engaged in sexual activity with Smith because she was emotionally dependent on him.  Accordingly, we cannot say that the TCCA unreasonably concluded that a rational factfinder could have determined that section 22.011(b)(10)'s emotional-dependency requirement was satisfied.

Third, Smith asserts that the evidence was insufficient to show that he exploited Downey's emotional dependency.  Downey, however, testified that Smith knew what was going on in her life and how vulnerable she was, that he knew that Downey's father committed suicide, and that he nonetheless told her about his own suicidal feelings.  Accordingly, the TCCA did not unreasonably rule that a rational factfinder could have concluded that Smith did in fact exploit Downey's emotional dependency.

Although we stop short of ruling that Smith's sufficiency-of-the-evidence challenge was frivolous, we do agree that the TCCA reasonably determined that a rational factfinder could have concluded that Smith was guilty of exploiting Downey's emotional dependency on him in his professional capacity as spiritual adviser within the meaning of section 22.011(b)(10).  Accordingly, we cannot say that the TCCA's decision involved an unreasonable application of *Strickland*'s

23

No. 12-10435

prejudice prong.    In other words, we conclude that the TCCA did not unreasonably determine that, had his appellate counsel raised this argument, there was not a reasonable probability that Smith would have succeeded on appeal.  *See* 28 U.S.C. § 2254(d)(1); *Smith*, 528 U.S. at 285.

3.

Finally, Smith argues that his court-appointed appellate counsel was ineffective for failing to argue that the trial court erroneously sustained the State's objection that Smith's trial counsel was improperly defining "clergyman." During closing argument, Smith's trial counsel argued that Smith was not a clergyman within the meaning of section 22.011(b)(10):

> MR. PEACOCK:   . . . . We're talking about clergyman.  We're not talking about somebody that's just pastoring.  A clergyman is clearly somebody that's a professional, right?  It's always been that way. He's not ordained.  The State's trying to poo-poo that.
>
> MR. HEALY:   I object to the misstatement of the law by defense counsel, definition of "clergyman."
>
> THE COURT:   Sustained.
>
> MR. PEACOCK:   It's not defined.  Thank you, Your Honor.
>
> THE COURT:   I sustained the objection.  Rephrase.
>
> MR. PEACOCK:   I'll move along, Your Honor.  Thank you.

To analyze Smith's ineffectiveness claim with respect to this issue—specifically, *Strickland*'s prejudice prong—we must consider whether Smith's trial counsel preserved the issue for appeal.  If he did not, it would have been fruitless for Smith's court-appointed appellate counsel to have raised the issue.

In *Lankston v. State*, the TCCA explained that "[s]traightforward communication in plain English" is sufficient to preserve trial error.  827 S.W.2d 907, 909 (Tex. Crim. App. 1992).  However, even if Smith's trial counsel had straightforwardly and in plain English alerted the trial court to his objection,

24

Smith's ineffectiveness claim would nevertheless fail.  First, to the extent that Smith's trial counsel was attempting to improperly define "clergyman" as requiring ordination, "[j]ury argument that misstates the law or contravenes the court's jury charge is improper."  *Uyamadu v. State*, 359 S.W.3d 753, 769 (Tex. App. 2011).  Second, Smith fails to address *Strickland*'s requirements; rather than discussing why his *appellate counsel* was ineffective for failing to raise this issue on appeal, he focuses his attention on why the *trial court* erred in sustaining the objection.  In light of the foregoing, we cannot conclude that the TCCA's rejection of Smith's ineffectiveness claim involved an unreasonable application of *Strickland* and its progeny.  *See* 28 U.S.C. § 2254(d)(1); *Smith*, 528 U.S. at 285.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.